AO 91 (Rev. 11/11)  Criminal Complaint    (modified by USAO for telephone or other reliable electronic means)

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT

4/16/2025

|  |  |
|---|---|
| United States of America | ) |
| v. | ) |
|  | ) |
| CHRISTIAN JONES | ) |
|  | ) |
|  | ) |

Case No.  3:25-mj-178

**25-mj-82-NRN**

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

_Defendant(s)_

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  June 2024 through December 2024  in the county of  Montgomery  in the
Southern  District of  Ohio , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) & (b)(1)(A) and 846 | Knowingly and intentionally conspired to possess with intent to distribute and distribution of 5 kilograms or more of a mixture or substance containing a detectable amount of cociane. |

This criminal complaint is based on these facts:

See affidavit of SA Joseph Conlon, DEA

☑ Continued on the attached sheet.

/s Joseph Conlon
_Complainant's signature_

SA Joseph Conlon, DEA
_Printed name and title_

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephone  _(specify reliable electronic means)_.

Date:  4/16/25

City and state:  Dayton, Ohio

Peter B. Silvain, Jr.
United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **IN THE MATTER OF THE CRIMINAL** | ) | |
| **COMPLAINT OF:** | ) | |
| | ) | **Case No.** 3:25-mj-178 |
| **Christian JONES** | ) | |
| | ) | |

**AFFIDAVIT IN SUPPORT OF
CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Joseph M. Conlon, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent with the United States Drug Enforcement Administration (DEA), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878, and for certain offenses under Title 18, including 18 U.S.C. Sections 924(c), 1956, and 1957. The information contained in this affidavit is either personally known by me or relayed to me by other law enforcement officers involved in this investigation. I have been employed as a Special Agent by the United States Department of Justice, DEA, since January 2022, and am currently assigned to the DEA Dayton Resident Office.  In January 2022, I reported to DEA Basic Agent Training in Quantico, Virginia.  In April 2022, I completed the 17-week Basic Agent Training Academy at the DEA Justice Training Center in Quantico, Virginia.  While attending Basic Agent Training, I received instruction on topics including narcotics identification, surveillance techniques, methods of operation of narcotics traffickers, law, evidence handling, undercover operations, current trends/patterns involving the distribution of narcotics, as well as other areas of drug enforcement.

2.    During my career with the DEA thus far, I have participated in an assortment of controlled substances investigations, including investigations involving marijuana, cocaine, heroin, methamphetamine, fentanyl, metonitazene, and counterfeit pharmaceuticals.  To date, I have assisted in the investigation of financial crimes to include; money laundering, structuring habits, and bulk cash smuggling.  I have interviewed witnesses, subjects, and defendants involved in and/or arrested for drug violations, and have participated in several joint interagency federal and state investigations.  Additionally, I have participated in and supervised the use of confidential sources, conducted physical surveillance, affected search warrants and arrest warrants, and written numerous reports.  I have also written multiple affidavits in support of applications for arrest warrants and search warrants, including search warrants for searches of residences, cellular telephone location pings, Title III intercepts, and GPS trackers. Through my training, I have become familiar with coded terminology utilized by drug trafficking organizations to disguise their illegal activities and the manner in which they conduct these illegal activities.  Through my training and experience, including on-the-job discussions with other law enforcement agents and cooperating suspects, I am familiar with the activities of drug smugglers and drug trafficking distribution networks.

3.    I have participated in various types of electronic surveillance, including the interception of wire communications, in investigations of drug traffickers, money launderers, and violent criminal enterprises.  I am also familiar with, and have personally participated in, other normal methods of investigating criminal enterprises, including, but not limited to, visual surveillance, the questioning of witnesses, the use of informants, undercover operations, the use

of pen registers, including pen registers in the form of digital analyzers, and the use of location information from cell phones to identify drug traffickers and reveal their methods of operation.

4.      I make this affidavit in support of a criminal complaint against, and an arrest warrant for, Grant MARES, for conspiracy to possess with intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(l), 841(b)(l)(A), and 846.

5.      As a result of my personal participation in the investigation of matters referred to in this affidavit together with information contained in law enforcement reports of investigation, and other information made available to me by other law enforcement officials, I am familiar with the facts and circumstances of this investigation. This affidavit does not detail every fact known to me, but rather, only sets forth information necessary to establish probable cause.

## PROBABLE CAUSE

6.      I am involved in the DEA Dayton Resident Office's investigation into a large-scale drug trafficking organization based in Mexico, which is responsible for distributing kilogram quantities of cocaine and fentanyl nationwide, including to the Southern District of Ohio. As I explain in more detail in the paragraphs that follow, my investigation has identified multiple people involved in the drug trafficking conspiracy, some of whom are described in the chart below:

//

//

//

//

3

| Conspiracy Member | Description |
|---|---|
| Individual 1 | A Dayton, Ohio-based drug trafficker who was involved in the conspiracy since in or about October 2023. DEA agents searched Individual 1's home in October 2024 and discovered evidence of drug trafficking. Individual 1 was arrested in the Southern District of Ohio in December 2024. |
| Individual 2 | A Texas-based drug trafficker. Individual 2 served as a broker to high-level drug traffickers nationwide, including Individual 1 in Ohio and JONES in Colorado. |
| Individual 3 | Mexico-based source of supply. Individual 3 communicated directly with Individual 2 to source Individual 2 with the drugs Individual 2 in turn sourced nationwide, including to Individual 1 and JONES. |
| Christian JONES | A Colorado-based drug trafficker supplied by Individual 2 with drugs Individual 2 had received from Individual 3. JONES's involvement in the conspiracy began at least by in or about June 2024 and continued through Individual 1's arrest in December 2024. |

7.      Christian JONES—who has multiple prior drug convictions, including at least one prior federal drug trafficking conviction—is a member of the organization and currently resides in Colorado Springs, Colorado.[1]  As I describe in more detail below, on a beginning date unknown, but at least by in or around June 2024, and continuing until in or about December 2024, in the Southern District of Ohio and elsewhere, JONES and others conspired to possess with intent to distribute and to distribute 5 kilograms or more of cocaine, a Schedule II controlled substance.

8.      On or about October 18, 2024, investigators executed federal search warrants at two residences located in Dayton, Ohio, which is located in the Southern District of Ohio. These residences belonged to a Dayton-based drug trafficker ("Individual 1"). Among other items of

---

[1] JONES was convicted in 2002 in the U.S. District Court of Colorado of possession with intent to distribute 500 grams or more of cocaine. JONES was sentenced to 262 months imprisonment. In 2016, JONES sentence was commuted by the President of the United State and JONES was subjected to a term of 8 years supervised release.

evidentiary value, agents seized from  Individual 1's residences cash drug proceeds totaling approximately $1,100,000; approximately fourteen kilograms of cocaine; approximately two kilograms of fentanyl; fourteen firearms; and four cell phones. The quantity of drugs seized from Individual 1's residences is indicative of a large-scale drug trafficker. Individual 1 was not arrested at the time of the October 2024 searches, and Individual 1 remained active in the drug trafficking conspiracy until Individual 1's arrest in December 2024.

9.     On or about the same date as the searches of Individual 1's residences, investigators reviewed four cell phones seized from Individual 1 pursuant to the warrants and discovered text messages, photographs, and videos between Individual 1 and a Texas-based drug trafficker ("Individual 2"). These communications included explicit references to the drug trafficking scheme, and included photographs of drugs and cash received. Investigators reviewed these communications and determined that Individual 2 used multiple different phone numbers to communicate directly with Individual 1 to coordinate their drug transactions, which occurred approximately every two weeks, beginning from at least October 2023 until Individual 1's arrest in December 2024. Investigators saw communications between Individual 2 and Individual 1 reflecting that, in or about October 2024, Individual 2 had arranged for a drug courier to transport a tractor trailer containing a shipment of fifty kilograms of cocaine to Individual 1 in the Southern District of Ohio. At Individual 2's behest, the drug courier completed the delivery of cocaine to Individual 1 in Dayton, Ohio, on or about October 16, 2024. Individual 2 had also agreed upon a price that Individual 1 would pay Individual 2 in exchange for the fifty kilograms of cocaine. Based on this information, in addition to other evidence, investigators confirmed that the cocaine seized from Individual 1's residence on October 18, 2024, originated from Individual 2.

10.    Upon further review of communications between Individual 1 and Individual 2, it was apparent that Individual 2 operated as a nationwide drug broker, coordinating shipments of narcotics to customers throughout the United States. Individual 2 told Individual 1 that Individual 2 had customers in multiple states, including Colorado. In one of the conversations between Individual 1 and Individual 2, Individual 2 referenced a multi-kilogram cocaine customer based in Colorado who owed Individual 2 money for a shipment of multiple kilograms of narcotics. These communications between Individual 1 and Individual 2 took place while Individual 2 was dealing drugs to JONES, which suggests that the Colorado customer Individual 2 referenced to Individual 1 was in fact JONES. Investigators have no evidence suggesting that Individual 2 had any other customers in Colorado. And, as I explain in more detail in the paragraphs that follow, subsequent communications between Individual 2 and JONES further substantiate that JONES is the customer Individual 2 identified to Individual 1 as owing him (Individual 2) money.

11.    During the course of the investigation, investigators lawfully obtained and reviewed cell phones belonging to Individual 2. Upon review, investigators discovered text messages, photographs, and videos between Individual 2 and JONES. These communications included explicit references to the drug trafficking scheme, and included photographs of drugs and cash received. Specifically, in or about October 2024, Individual 2 coordinated with JONES to ship JONES a shipment of 40 kilograms of cocaine. JONES then coordinated with Individual 2 and other co-conspirators to send bulk cash back to Individual 2 as payment for the shipment of narcotics. Based on these communications, it appears that JONES sent Individual 2 a large amount of bulk U.S. currency. Individual 2 told JONES that the amount of money was incorrect for the quantity of drugs sold, and that JONES owed money to Individual 2 and Individual 2's Mexico-

based source of supply ("Individual 3"). During this same time frame, JONES indicated via text messages with Individual 2 that JONES had customers in Ohio. Furthermore, JONES and Individual 2 discussed the October 2024 execution of search warrants against Individual 1 in Dayton, Ohio. The evidence thus suggests that JONES knew that Individual 2 (the broker) was supplied by Individual 3 (the supplier in Mexico), and moreover, that Individual 2 was using the supply of drugs from Individual 3 to source cocaine to both Individual 1 (the Dayton-based drug trafficker) and JONES. The conspiracy involving JONES and Individuals 1, 2, and 3 began at least in or by June 2024—corroborated by, among other things, June 2024 WhatsApp communications about drug trafficking between JONES and Individual 2—through December 2024 (when Individual 1 was arrested in the Southern District of Ohio). Throughout the duration of the conspiracy involving all the aforementioned individuals (i.e., from June 2024 through December 2024), Individual 1 resided in the Southern District of Ohio and trafficked drugs in the Southern District of Ohio.

12.    In April 2025, DEA investigators lawfully obtained audio and/or visual calls between JONES and Individual 2, during which JONES confirmed that JONES still owed Individual 2 and Individual 3 an amount of money from a past shipment of narcotics, specifically the October 2024 shipment. During the intercepted communications, JONES stated that JONES still was in possession of kilograms of cocaine from the previous shipment from Individual 2 in October 2024.

13.    On or about April 15, 2025, DEA investigators executed a federal search warrant for JONES's residence in Colorado Springs, Colorado. Among other items of evidentiary value, agents seized from JONES's residence approximately $320,000 in cash; approximately seven

kilograms of cocaine; six firearms; and three cell phones. The quantity of drugs seized from JONES's residence is indicative of a large-scale drug trafficker. The evidence seized from JONES's home in April 2025 further corroborates JONES's involvement in the conspiracy with Individual 1, Individual 2, and Individual 3.

14.     On the same day agents searched JONES's house, DEA investigators interviewed JONES. Prior to the interview, investigators advised JONES of his constitutional rights (*Miranda* warnings). JONES admitted to investigators that the narcotics, firearms, and cash seized from the residence belonged to him and him alone.

15.     Based on the facts set forth in this Affidavit, there is probable cause to believe that, between a beginning date unknown, but by at least in or about June 2024, and continuing until in or about December 2024, in the Southern District of Ohio and elsewhere, Christian JONES did conspire with others to possess with intent to distribute and to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(l), and 841(b)(l)(A), and 846.

//

//

//

//

//

//

//

8

Case No. 1:25-mj-00082-NRN    Document 1-1    filed 04/17/25    USDC Colorado    pg
10 of 10
Case: 3:25-mj-00178-PBS Doc #: 1 Filed: 04/16/25 Page: 10 of 10 PAGEID #: 10

## CONCLUSION

16.    Based on the foregoing, I respectfully request that the Court issue the proposed

criminal complaint and arrest warrant.

Respectfully submitted,

*/s Joseph Conlon*
Joseph Conlon
DEA Special Agent

Subscribed and sworn to before me via reliable electronic means on April __16th__, 2025.

Peter B. Silvain, Jr.
United States Magistrate Judge

9